# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| STEVEN ALLEN HASKINS<br>    LA. DOC #562947 | CIVIL ACTION NO. 3:10-cv-0634 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| LOUISIANA DEPT. OF PUBLIC SAFETY<br>AND CORRECTIONS, ET AL. | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Steven Allen Haskins, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 15, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is currently incarcerated at the Richwood Detention Center (RDC), Monroe, Louisiana; however, when he filed his complaint he was incarcerated at the Madison Correctional Center (MCC), Tallulah, Louisiana.  He complained of conditions and circumstances at that facility and elsewhere and sued the LDOC, Madison Parish Sheriff Larry Cox, Major Antonio Johnson, Nurse Wanda Nolan, and Deputy Freddie Brooks. Plaintiff prayed for $2,000,000 in compensatory damages. In a subsequent pleading he sued Jerred Brooks for refusing to allow plaintiff trusty status. In yet another pleading, plaintiff  requested an emergency hearing and his immediate release from custody.

These matters have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint and all associated motions and requests be **DISMISSED WITH PREJUDICE** either as frivolous or for failing to state a claim for which relief may be granted.

## *Background*

### *1. Original Complaint [Doc. 1]*

Plaintiff was an LDOC inmate incarcerated at the MCC in Tallulah, Louisiana when he filed his original complaint. According to plaintiff, he was transferred from the Caddo Parish Corrections Center to the Southern Correctional Center[1] located in Tallulah sometime in mid-December, 2009. Plaintiff requested access to unspecified items of personal property[2] that were contained in "a clear plastic sealed baggie" however his request was denied. Notwithstanding his repeated requests, the property was not returned and apparently remains missing. On January 25, 2010, plaintiff submitted a grievance about the property to Major Johnson.

On or about January 11, 2010, a water main burst in the town of Tallulah causing the prison to be without water for three days. According to plaintiff, when the water service resumed he experienced stomach problems and numbness and swelling of his tongue, lips, and throat and he ceased drinking water completely.

On January 12, 2010, plaintiff wrote a letter to LDOC Secretary LeBlanc. According to the letter, plaintiff was transferred to MCC on December 17, 2009, to serve a 2-year sentence for failing to register as a sex offender. Plaintiff requested transfer to a work-release facility or a prison with rehabilitation counseling. At that time, his only complaint about MCC was his inability to get to the

---

[1] Apparently the MCC is composed of various facilities located in close proximity to one another in or near Tallaluh.

[2] Plaintiff provided a copy of the Caddo Correctional Center's Property Inventory Form which showed that he possessed various items of clothing, a ring, and a wallet containing his Louisiana Drivers License, Louisiana I.D. card, Social Security Card, and three credit cards. [Doc. 1, p. 6]

law library as often as he would like and its lack of rehabilitation counseling. [Doc. 1, pp. 7-9]

From March 4 through March 13, plaintiff was unable to take medication prescribed to treat bi-polar manic depression because prison guards could not find his pills or the sheet prescribing his medication. On March 8, a deputy gave plaintiff the wrong medication and plaintiff refused to take it. Finally, on March 13, his medication was found and he resumed the treatment.

On March 12, 2010, plaintiff sent another grievance to Major Johnson inquiring about his lost property and requesting transfer to a work-release facility or a facility "that offers some kind of rehabilitation."

On March 12 plaintiff was transferred to MCC "due to a problem with the medical department and deputies that pass out medication." On March 15 he was told that he could not refuse his medication. According to plaintiff, Nurse Nolan refused to provide Albuterol, an asthma medication. She advised plaintiff to submit a request and she would provide him with "Adair".[3] As of April 5, 2010, plaintiff had not received either medication for asthma, although he was apparently provided the medication prior to his transfer to Richwood since he subsequently complained that his inhaler was confiscated upon his arrival at that institution.

On March 16 plaintiff again complained to Major Johnson about his property. Plaintiff provided an invoice detailing the contents of the lost property and Johnson promised to find the property for plaintiff; however, he has been unable to locate the property. Plaintiff again asked for

---

[3] Plaintiff, no doubt, is referring to Advair – a combination of fluticasone and salmeterol. Fluticasone is in a class of medications called steroids. It works by reducing swelling in the airways. Salmeterol is in a class of medications called long-acting beta-agonists (LABAs). It works by relaxing and opening air passages in the lungs, making it easier to breathe. Albuterol is in a class of medications called bronchodilators. It works by relaxing and opening air passages to the lungs to make breathing easier. Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health. Drugs & Supplements on-line at http://www.nlm.nih.gov/medlineplus/druginformation.html

a transfer and Johnson advised that he could not transfer because plaintiff is a sex offender. Plaintiff acknowledged that he was convicted of a sex crime 20 years ago, but he is currently in prison for failing to register as a sex offender following his release from custody.

On March 23, 2010, plaintiff complained about a "severe upper abdominal pain."He was advised to make a "sick call" request, but the deputy did not provide plaintiff with the paperwork necessary to make sick call. On the following evening he again complained and he was given an antacid and told to return to his bunk. Later, he experienced more pain and fever. His demands to be taken to the hospital were ignored. Later, when he insisted on seeing the nurse, he was sprayed with pepper spray by Deputy Brooks.  He was examined by the nurse approximately one hour later and was provided medication for his stomach pain.

On March 24, Nurse Nolan ordered that plaintiff be provided a "Hypertension Diet." However, he claimed that the inmates who served food knew nothing about his diet. According to plaintiff, as of April 5 he had still not received his diet, his property, or a proper diagnosis for his stomach problems.

## 2. Supplemental Complaint [Doc. 4]

On May 4, 2010, plaintiff submitted a Supplemental Complaint. Plaintiff complained that he was denied transportation to a divorce trial in Caddo Parish on April 26, 2010, despite the fact that he received notice of the trial and advised prison authorities on March 15, more than one month in advance of the trial date.  According to plaintiff, he received conflicting advice from corrections officers concerning who was responsible for transporting him to the court proceeding. Ultimately, judgment was rendered in favor of plaintiff's spouse and according to plaintiff, he lost "...  $96,000.00 due to the fact that I had no attorney to represent me to which I was going to represent

myself in the courtroom..."

Plaintiff concluded the pleading by demanding judgment against Sheriff Cox in "... the amount of the remaining balance of the home that was in the final argument of the trial that myself was denied the chance to be heard in a Court of Law... $96,000.00 for the negligence Madison Parish has allowed for my home to be forfeited due to not being transported to Caddo Parish for said trial."

### 3. Second Supplemental Complaint [Doc. 5]

On June 2, 2010, plaintiff submitted yet another Supplemental Complaint.  He asked to join Captain Jerred Brooks as a defendant because Brooks has refused to allow plaintiff trusty status due to plaintiff's 1998 rape conviction and his status as a sex offender. He again complained that his requests for transfer to another facility where he could obtain rehabilitation services have been ignored. He prayed for judgment in the amount of $2,000,000 against Sheriff Cox.

### 4. Change of Address [Doc. 6, 7, and 9]

In a letter dated May 30, 2010, plaintiff advised that he was moved to another section of the MCC. In a letter dated June 3, 2010, he advised that he was transferred to the East Baton Rouge Parish Work Release Center. He also advised that he was under "duress" from Major Johnson "... to sign papers that are not of fact..."

### 5. Request for Emergency Hearing  [Doc. 8]

In a letter dated June 13, 2010, plaintiff advised that he was transferred to Richwood Detention Center "... out of retaliation due to medical cost and work release status."  He requested a hearing "... due to the fact that my medical situation is being tampered with due to lack of medicine."  He requested his immediate release from custody "... due to my breathing problems." He also alleged that LDOC "does not want to pay for this medication."

5

### 6. Third Supplemental Complaint [Doc. 10]

On June 15, 2010, plaintiff filed his Third Supplemental Complaint.  He claimed that on June 1, 2010, Major Johnson  "... has under duress, forced myself to sign three statements that were not true ..." He also alleged that his transfers were "... due to the fact of the cost of medication..." He also claimed that he was not allowed to participate in work-release programs at East Baton Rouge Parish, Pointe Coupee Parish, or West Feliciana Parish and instead was transferred to Richwood, his present place of confinement, on June 10, 2010.  He claimed that unknown persons at Richwood confiscated his asthma inhaler and unspecified "pieces of evidence to be used in this Federal Court at any set hearings..."

He again claimed that he is being denied an opportunity to participate in work-release programs based upon his rape conviction 20 years ago. He claimed that the denial of unspecified "rehabilitation programs" deprive him of the opportunity to earn additional good time credits.  He also complained that he is being retaliated against for having filed and maintained the current law suit. He prayed for his immediate release from custody and for monetary damages.

### 7. Summary of Plaintiff's Complaints

**a. Loss of Personal Property** – In his original complaint plaintiff complained that items of personal property – clothing, a ring, a wallet and its contents – were lost or stolen when he was transferred from Caddo Parish to his present place of confinement in December 2009.

**b. Conditions of Confinement** – Plaintiff also complained about the conditions experienced in January 2010 when a water main ruptured and water service was interrupted in the prison for a period of three days; he also complained that once water service resumed, the water caused him to experience various health problems.

*c. Work-Release* – Plaintiff complained that he was not allowed to obtain trusty status or participate in work-release or any other rehabilitation programs.

*d. Medical Care* – Plaintiff asserted several instances where he claims he was denied medical care.  During the period between March 4 - 13, he was unable to take the medication used to treat bi-polar disorder because guards could not find his pills.

On March 8, a deputy gave him the wrong medication and plaintiff refused to take it.

He was not allowed Advair or Albuterol for an unspecified period of time.

On March 23 he complained of severe stomach pain and his demands for hospitalization were ignored. He was not afforded a Hypertension Diet as ordered by Nurse Nolan.

He also requested an emergency hearing to address the "lack of medicine" and requested his immediate release from custody.

*e. Access to Court* – Prison officials did not arrange for his transportation to court in Caddo Parish on the occasion of his divorce trial and as a consequence he claimed a loss of $96,000.00.

*f. Retaliation* – Plaintiff claimed that his transfer to Richwood was an act of retaliation and was "due to medical costs."

### Law and Analysis

### 1. Screening

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.A. §§ 1915 and 1915A; see also 42

7

U.S.C.A. § 1997e(c) (providing that a district court shall on its own motion or the motion of any party dismiss a complaint by a prisoner regarding prison conditions if the court is satisfied the complaint is frivolous, malicious, falls to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff's complaints and exhibits present the best case which could be presented by plaintiff under the circumstances. The undersigned is convinced that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that his complaint should be dismissed with prejudice.

### 2. Loss of Personal Property

Plaintiff complained that various items of personal property were lost or stolen when he was transferred to Madison Parish from Caddo Parish. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff's claim implicates the due

process clause of the Fourteenth Amendment. The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." United States Constitution, Amendment XIV.

Plaintiff implies that he was deprived of his personal property without due process. A claim for random deprivation of personal property is not cognizable under §1983.  In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law.  The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due.  *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts.  Although a litigant  may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy.  *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs, as implied herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995);  *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson Doctrine*) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which

9

results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that a random and unauthorized deprivation occurred when plaintiff's personal property was either lost or stolen.  Thus, since plaintiff's loss was the result of a random and unauthorized deprivation, he is not entitled to relief pursuant to §1983 if adequate state law remedies are available.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence or for the intentional torts committed by the defendants.  See  La. Civil Code article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine.  It lacks an arguable basis in law and therefore this claim should be dismissed as frivolous.

### 3. Conditions of Confinement

Plaintiff complained of conditions of confinement that resulted when the Town of Tallulah's water supply was interrupted for three days and then, after it was restored, the water quality was such that he experienced health problems. Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment.  While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while  the Eighth Amendment does not mandate comfortable prisons,  it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th

10

Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible prison officials acted with <u>deliberate indifference to the prisoner's conditions of confinement</u>. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

As shown above, federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104

L.Ed.2d 338 (1989).

Plaintiff's complaints concerning the water at MCC cannot rationally be blamed upon the defendants. In addition, plaintiff has not alleged that he sustained anything other than *de minimis* [4] harm or injury as a result to his exposure to the complained of conditions.

In order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004). Plaintiff, at worst, was inconvenienced and not injured or otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual punishment" since the deprivations alleged were not so extreme as to "... rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025. Further, the injuries described are all *de minimis*, at worst.

Plaintiff's Eighth Amendment conditions of confinement claims are  frivolous.

### 4. Work-Release and Due Process

Plaintiff implies that the defendants denied him due process when they denied him work release placement. Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous.

---

[4]  It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997).  A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence,  "... is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111, the statute which authorizes the LDOC's work-release program – entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). The statute is virtually identical to La. R.S.15:711 which authorizes Parish Sheriffs to establish work-release programs such as the program operated in Bossier Parish. Indeed, the latter statute also provides, "Each sheriff shall establish written rules for the administration of the work release program and shall determine those inmates who may participate in the release program..." Since the statutes are virtually identical in substance, it is safe to conclude that R.S.15:711, like its LDOC counterpart, R.S.15:1111, also does not create a liberty interest subject to the Due Process Clause.

Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that his rights to due process have been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of entitlement to it." *Id.* (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of

13

"entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). Plaintiff can point to no rule or understanding which entitles him to participate in the program. Indeed, the Fifth Circuit has previously held that prisoners have no property interest in work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995). Plaintiff is not constitutionally entitled to participate in the Louisiana work-release program and therefore to the extent that he implies that he was denied either a liberty interest or a property right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

Nor is plaintiff constitutionally entitled to placement in a particular prison that offers educational or rehabilitation services. Inmates do not a have a protected property or liberty interest in prison employment. *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989) ; *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988). Nor do prisoners have a constitutional right to participate in drug treatment programs. See *Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections). The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). Nor do prisoners have a constitutional right to "social services." *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).

Likewise, to the extent that plaintiff contends that the failure of defendants to provide the types of services he desires amounts to cruel and unusual punishment in violation of the Eighth

Amendment, his claim fares no better. The lack of a rehabilitative programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. See *Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986), citing, *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

Finally, plaintiff implies that he has a right to be transferred to some other prison. Again, he is mistaken. Prisoners do not have a constitutionally derived liberty interest in being held in any particular institution. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

### 5. Access to Court

Petitioner claims that he has been denied his right of access to the Courts in two instances: first, because of deficiencies in the prison law library and second, because prison officials did not provide him with transportation to Caddo Parish divorce court.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access

to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821;  *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not shown how his ability to prepare and transmit legal documents complaining of conditions of confinement or the legality of custody has in any way been inhibited. Indeed, it seems that he maintains that he was impeded, if at all, in his ability to prosecute a civil divorce and community property action.

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Plaintiff has provided only conclusory allegations concerning the loss of community assets and those allegations are insufficient to state a claim for which relief may be granted.

### 6. Retaliation

Plaintiff claims that his transfer to his current place of confinement was an act of retaliation. To state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).

Prisoners are constitutionally protected from retaliation for complaining about a prison

official's actions. See *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995); *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir.1989). The Fifth Circuit has held that some acts that may be motivated by retaliatory intent, "are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006).

Plaintiff's allegations concerning the motive for his transfer to the present prison of confinement are conclusory at best. In addition, plaintiff has not alleged any intent to retaliate on the part of the defendants; after all, plaintiff himself complained about the conditions of confinement and time and again requested a transfer. Thus, his ultimate transfer does not appear to be a retaliatory act . Finally, it is clear that the transfer, even if a retaliatory act, was clearly *de minimis* and has not deterred plaintiff from complaining about the conditions of confinement.

### 7. Medical Care Claims

Finally, plaintiff asserted several instances where he claimed he was denied appropriate medical care.  First, during the period between March 4 - 13, he claimed that he was unable to take the medication used to treat bi-polar disorder because guards could not find his pills. Second, he claimed that on March 8, a deputy gave him the wrong medication and plaintiff refused to take it. Third, he claimed that he was not allowed Advair or Albuterol for an unspecified period of time. Fourth, he claimed that on March 23 he complained of severe stomach pain and his demands for hospitalization were ignored. Fifth, he claimed that he was not afforded a Hypertension Diet as ordered by Nurse Nolan. Finally, he requested an emergency hearing to address the "lack of medicine" and requested his immediate release from custody.

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under

the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447 (5th Cir. 2001) at 458-59 (emphasis supplied) Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that

"the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.*

Merely alleging that the defendants should have undertaken additional diagnostic measures or utilized an alternative methods of treatment does not elevate the claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference).

Finally, the facts alleged are at worst sufficient to establish negligence or even malpractice on the part of the defendants; however, those allegations, taken as true for the purposes of this Report, do not establish deliberate indifference. As previously noted, the failure to alleviate a significant risk that the defendant should have perceived, but did not is insufficient to show deliberate indifference. Compare *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752,

19

756 (5th Cir.2001)(emphasis supplied). Nor may deliberate indifference be inferred in this instance from the defendants' possibly negligent or even a grossly negligent response to plaintiff's condition. See *Thompson*, 245 F.3d at 459 (emphasis supplied).

Finally, and with respect to his final claim, plaintiff asked to be released from custody – relief which may not be granted in a civil rights action. In short, plaintiff's medical care claims should be dismissed for failing to state a claim for which relief may be granted.

### Conclusion and Recommendation

Plaintiff's numerous claims are either manifestly frivolous or, they fail to state a claim for which relief may be granted and dismissal on that basis is recommended. Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous or for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).___**

20

In Chambers, Monroe, Louisiana, June 23, 2010.

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**