RECEIVED
IN MONROE, LA



AUG 1 6 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

STEVEN ALLEN HASKINS
LA. DOC #562947

VS.

LOUISIANA DEPT. OF PUBLIC SAFETY
AND CORRECTIONS, ET AL.

CIVIL ACTION NO. 3:10-cv-0634

SECTION P

JUDGE ROBERT G. JAMES

MAG. JUDGE KAREN L. HAYES

## RULING

Pending before the Court is a civil rights Complaint filed pursuant to 42 U.S.C. §1983 by *pro se* Plaintiff Steven Allen Haskins, proceeding *in forma pauperis*. On June 23, 2010, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 11] in which she recommended that the Court dismiss Plaintiff's Complaint as frivolous and failing to state a claim as a matter of law. On August 10, 2010, Plaintiff filed objections to the Report and Recommendation. [Doc. No. 16].

Having fully considered the record in this matter, including Plaintiff's objections, the Court agrees with and ADOPTS the Magistrate Judge's Report and Recommendation. The Court issues this Ruling to address several of Plaintiff's objections.

First, Plaintiff notes that he is currently in the custody of Allen Correction Center in Kinder, Louisiana.[1] While the Magistrate Judge correctly recounted Plaintiff's history of confinement at the

---

[1]The Report and Recommendation was originally sent to Plaintiff's last known place of confinement on June 23, 2010, but that copy was returned to the Clerk of Court. On June 28, 2010, Plaintiff filed a change of address, and the Clerk of Court forwarded a copy to Plaintiff's listed place of confinement on July 7, 2010, but that copy was also returned. On July 21, 2010, Plaintiff filed yet another change of address, and the Clerk of Court again forwarded a copy of the Report and Recommendation to his present place of confinement. [Doc. Nos. 12-15].

time her Report and Recommendation issued, the Court does take note of Plaintiff's present place of confinement.[2]

Second, Plaintiff now contends that his claims are "solely against the Sheriff's office in Madison Parish which also includes these facilities mentions [sic] in the civil action suit."[3] [Doc. No. 16, p. 2]. To the extent that Plaintiff attempts to state a claim against the Madison Parish Sheriff's Office, his claim is frivolous because a parish sheriff's office is not a legal entity subject to suit. *See Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002); *see also Mayo v. Madison Parish Sheriff's Office*, No. 07-0760, 2007 WL 2491364, at *3 n.2 (W.D. La. Aug. 2, 2007) ("Further, plaintiff's claims against the Madison Parish Sheriff's Office are also frivolous. In Louisiana the Parish Sheriff's Offices are not legal entities capable of suing or being sued (citing *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1988)).

In his Complaint, Plaintiff contended that he had not received adequate medical care for his asthma. The Court agrees with and ADOPTS the Magistrate Judge's conclusion that Plaintiff's allegations fail to state a claim for deliberate indifference to his medical condition. However, in his

---

[2]On page 6 of the Report and Recommendation, the Magistrate Judge states that Plaintiff complains of items stolen "when he was transferred from Caddo Parish to his present place of confinement in December 2009." [Doc. No. 11, p. 6]. That statement appears factually incorrect. She correctly states on page 8 that "Plaintiff complained that various items of personal property were lost or stolen when he was transferred to Madison Parish from Caddo Parish." [Doc. No. 11, p. 8]. To the extent that these statements are inconsistent, the Court finds that the statement on page 8 accurately recounts Plaintiff's claim that items listed on the inventory form for Caddo Correctional Center were not located when he was transferred to Southern Correctional Center in Tallulah, Louisiana (located in Madison Parish), in December 2009.

[3]Despite his use of the term "solely," Plaintiff also listed the Louisiana Department of Public Safety and Corrections ("the LDOC"), Madison Parish Sheriff Larry Cox, Major Antonio Johnson, Nurse Wanda Nolan, Deputy Freddie Brooks, and Captain Jerrod Brooks as Defendants to his lawsuit.

2

objections, Plaintiff clarifies his allegations regarding his asthma condition. He contends that, while

he was confined at Madison Correctional Center, Defendant Nurse Wanda Nolan prescribed him

Albuterol, which contains "sulfa," and he is allergic to sulfa. He alleges that, had she looked at his

medical records, she would have known that he is allergic to sulfa drugs. She allegedly agreed to

order Advair for Plaintiff, but he did not receive the Advair in a timely manner. Later, as a result

of a meeting with Dr. Neumann and Nolan, Plaintiff began receiving Advair.

While there was some confusion about Plaintiff's factual allegations, he has still failed to

state a claim of deliberate indifference under § 1983. At worst, Nolan negligently failed to review

Plaintiff's chart and determine that he might be allergic to the type of drug she obtained to treat his

asthma, and she did not obtain a different asthma medication as quickly as he would have liked.

There are no facts alleged which indicate that Nolan was deliberately indifferent to his medical

condition of asthma or to his sulfa allergy.[4] Accordingly, Plaintiff has still failed to state a claim as

a matter of law based on these allegations.

However, Plaintiff also contends that Defendant Deputy Freddy Brooks pepper sprayed him

merely because he asked to see the nurse for stomach pain. Based on this allegation, it appears that

Plaintiff is asserting an Eighth Amendment claim of use of excessive force. To prove this claim, a

plaintiff must establish that the force was not applied in a good faith effort to maintain or restore

discipline, but maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7

(1992). Plaintiff alleges that, around 11 P.M. on March 23, 2010, he complained about "severe

_____

[4]Plaintiff stated that he actually used the Albuterol inhaler, so, if he is allergic to sulfa-type drugs, he did not have a reaction to the medication, and he has not alleged that he suffered any health consequences at all from the use of Albuterol or during the extended period of time before he could obtain another medication, such as Advair.

3

upper abdominal pain." He was advised to make a "sick call" request, but the deputy did not provide Plaintiff with the form. Between 12:30 A.M. and 10:30 A.M. on March 24, 2010, Plaintiff was given an antacid, but denied an emergency room visit. An unidentified deputy informed him that a nurse had been told about his condition.[5] At approximately 10:30 A.M. on March 24th, Plaintiff talked to Deputy Brooks and told him he had stomach pain during the night. Brooks told Plaintiff that a stomach ache is not an emergency and asked if Plaintiff had filled out a sick call form. Plaintiff said that the nurse was aware of his condition, so Brooks told him to get back to his bunk. When Plaintiff returned to the deputies' station again, Brooks sprayed him with pepper spray.[6]

To the extent that Plaintiff attempts to state an Eighth Amendment claim for excessive force, his own account of the facts indicate that Brooks sprayed him after he was told to return to his bunk and either did not comply or returned to the deputies' stations again without permission. Plaintiff has not alleged facts showing that Brooks acted maliciously and sadistically, rather than in an effort to restore order.

Even if Plaintiff's facts were sufficient to state a claim for excessive force, Plaintiff would not be entitled to recover the $2,000,000.00 in damages he seeks. Under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(e), a prisoner cannot recover compensatory damages where no physical injury is alleged. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (*per curiam*).

---

[5]The Report and Recommendation states that Plaintiff's interaction with the deputy took place "[o]n the following evening" [Doc. No. 11, p. 4]; however, according to Plaintiff's Complaint, all events took place between 11:00 P.M. on March 23, 2010, and 11:30 A.M. on March 24, 2010. *See* [Doc. No. 1, p. 2].

[6]Plaintiff was examined by the nurse approximately one hour later and was provided medication for his stomach pain. Plaintiff's condition never necessitated an emergency room visit.

4

Plaintiff does not contend that he suffered more than a *de minimis* physical injury associated with temporary effects of exposure to pepper spray. While a prisoner can pursue punitive or nominal damages based on the violation of his constitutional rights, Plaintiff, in this case, does not seek nominal or punitive damages. Thus, it is appropriate for the Court to dismiss his excessive force claim on this alternative basis. *See Mayfield v. Texas Dep't of Crim. Justice*, 529 F.3d 599, 606 (5th Cir. 2008).

Next, Plaintiff appears to assert an Eighth Amendment claim based on his second-hand exposure to environmental tobacco smoke ("ETS"). Plaintiff identified his second-hand exposure claim in his Complaint, pointing out that he had to use his asthma inhaler more frequently because the ETS aggravated his asthma. In his objections, Plaintiff expounds on the claim, stating that he is "allergic" to smoke, but that he was assigned to a "particular area" of a "dorm type setting" at MCC where smoking was allowed, though the entire facility was supposed to be non-smoking. [Doc. No. 16, pp. 4, 7, and attached August 4, 2010 letter]. As a result, Plaintiff claims that he suffered "swelling of the tongue, throat, lips and . . . side effects such as the common cold." [Doc. No. 16, p. 4]. Plaintiff appears to have been subjected to the ETC for a two and one-half month period. Plaintiff alleges that his exposure occurred when he was confined at MCC in a particular area of the dorm, but when Plaintiff was moved from Caddo Correctional Center to Tallulah, Louisiana, he was first confined at Southern Correctional Center in mid-December 2009. On March 12, 2010, he was moved to MCC, another facility in the "same compound." [Doc. No. 1, p. 1; Doc. No. 16, p. 1].[7]

_____

[7]As the Magistrate Judge surmised in her Report and Recommendation, according to Plaintiff, Southern Correctional Center, MCC, and Madison Parish Detention Center are three separate buildings located on the same property, allegedly under the control of Defendant Sheriff Larry Cox. [Doc. No. 16, p. 3].

By May 30, 2010, Plaintiff had been moved to another area at MCC. Therefore, Plaintiff was subjected to ETS for approximately two and one-half months, during which time he suffered physical injuries he attributes to his exposure, but for which he failed to file a grievance. Plaintiff's only alleged complaint about his exposure to ETS or the conditions was to Defendant Nolan and Dr. Neumann.

> The Supreme Court has applied a two-prong test to determine whether exposure to second-hand smoke violates a prisoner's Eighth Amendment right. First, a prisoner must prove objectively that he is "being exposed to *unreasonably high levels* of ETS [Environmental Tobacco Smoke]." *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 2482, 125 L.Ed.2d 22 (1993) (emphasis added). In assessing this first factor, the court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm. *See id.* 509 U.S. at 37, 113 S.Ct. at 2482. The court also has to determine "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (emphasis in original). Second, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight. *See id.*

*Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001).

With regard to the first prong, a plaintiff must ordinarily provide statistical and scientific evidence to support the objective component. However, the Court may take judicial notice, pursuant to Fed. R. Civ. P. 201, that the United States Surgeon General's June 2006 report concluded that scientific evidence shows there is no safe level of or exposure to second-hand smoke.

Even assuming that Plaintiff could meet his burden as to the first prong, *see Murrell v. Casterline*, 307 Fed. Appx. 778 (5th Cir. Mar. 25, 2008), Plaintiff must allege facts sufficient to demonstrate the subjective component, i.e., Defendants' deliberate indifference. His claim fails on this prong. Plaintiff admits that MCC was a non-smoking facility, which bears heavily on the inquiry into deliberate indifference. *See Whitley v. Hunt*, 158 F.2d 882, 887-88 (5th Cir.1998);

*Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir. 1997); *Wilson v. Lynaugh*, 878 F.2d 846 (5th Cir.), *cert. den.*, 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989). Further, Plaintiff admits that he did not file a grievance about his exposure to ETS. He has made absolutely no factual allegations to indicate that Sheriff Cox was aware of and deliberately disregarded his exposure to ETS.[8] Finally, while Plaintiff verbally complained to Defendant Nolan of the ETS when discussing his asthma treatment, he admits that she offered to place him in lockdown, demonstrating that she was not acting with deliberate indifference.[9]    Thus, despite filing a Complaint, two amendments to his Complaint, and objections to the Report and Recommendation, Plaintiff has not made any factual allegations that Defendants were deliberately indifferent to his ETS exposure. Therefore, Plaintiff also fails to state a claim based on his second-hand ETS exposure.

Plaintiff's remaining objections were addressed by the Magistrate Judge in her Report and Recommendation, which this Court has adopted.

MONROE, LOUISIANA, this \_\_\_\_15\_\_\_ day of August, 2010.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[8]For example, Plaintiff does not allege that any Defendants, other than Nolan, knew that he was allergic to ETS or that ETS caused the asthma and other problems he described. Plaintiff also does not allege that he asked any of the Defendants, including the LDOC, to enforce the no smoking policy, or to move him to another area. Finally, Plaintiff was, in fact, moved from the smoking area shortly after his medical visit with Nolan and Dr. Neumann.

[9]According to Plaintiff, Dr. Neumann objected to his placement in lockdown, but Plaintiff does not explain the basis for Dr. Neumann's objection. Plaintiff does not allege that Nolan or Neumann agreed to or did inform Sheriff Cox of his concerns.

7